Law Offices
HINSHAW & CULBERTSON LLP
2375 E. Camelback Rd.
Suite 410
Phoenix, AZ 85016
602-631-4400
602-631-4404
raoyama@hinshawlaw.com
meghasingh@hinshawlaw.com

Randy J. Aoyama (020096)
Megha Singh (036306)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Department of Economic Security, an Arizona State agency,<br><br>  Plaintiff,<br><br>v.<br><br>Christine Wormuth; Secretary of the Army, in her official capacity,<br><br>  Defendant. | No. CaseNumber<br><br>**COMPLAINT FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

1. Plaintiff Arizona Department of Economic Security ("ADES") brings this action for declaratory and injunctive relief against the Secretary of the Army to enjoin her from replacing ADES as the contractor to operate food services at Fort Huachuca until such time as an arbitration panel, convened pursuant to the Randolph-Sheppard Vending Facility Act, has had the opportunity to render a decision regarding the disputed contract.

2. ADES is an agency of the State of Arizona and is the designated State Licensing Agency ("SLA") under the Randolph-Sheppard Act, 20 U.S.C. § 107b. As the SLA for the State of Arizona, ADES has the responsibility to recruit, train, license, and

1050789\313728747.v1

place individuals who are blind as operators of vending facilities located on federal and other properties.

3. Under the Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq.*, and its implementing regulations, 34 C.F.R. § 395, ADES has a priority for contracts pertaining to the operation of cafeteria services on federal property in Arizona, including military food service operations.

4. The Arizona Department of Economic Security has held the contract to provide food services at Fort Huachuca since 2004, and it has done so with its current blind vendor, Scott Weber, for close to a decade. ADES has consistently received positive feedback from the Army for its operation of the Fort Huachuca food service facilities.

5. In March 2022, the Army issued a request for proposals for a new contract to operate the food services at Fort Huachuca (Solicitation W9124J-20-R-0027 (the "Solicitation")). The new contract has a five-year ordering period.

6. In May 2022, ADES timely submitted a response to the Solicitation.

7. As recently as December 2022, the Army deemed that ADES's performance "meets contractual requirements," and stated in its performance evaluations, that it "would recommend [ADES] for similar requirements in the future."

8. ADES's proposal in response to the Solicitation, including its proposed staffing and pricing, was grounded in its experience successfully operating the same cafeterias covered in the Solicitation.

9. The Army misconstrued or misapprehended ADES's proposal in fundamental ways, including erroneously concluding that ADES's proposal did not include workers to record headcount at the dining facilities when in fact ADES referenced those workers as "Admin/Cashier" and as "Office Clerk" rather than as the Army's preferred title of "Cashier." Rather than seeking to clarify its misunderstandings,

1050789\313728747.v1

the Army took the drastic step of excluding ADES's proposal from consideration as "technically unacceptable" without any discussions—much less the meaningful discussions required under the Randolph-Sheppard Act.

10. In excluding ADES's proposal, the Army, acting through the Contracting Officer assigned to the dining facilities at issue, failed to apply the Randolph-Sheppard Act's priority.

11. On January 20, 2023, the Army issued a pre-award notice letter informing ADES that its proposed staffing was unacceptable, and that as a result, ADES's bid had been excluded from the competitive range and ADES would not be considered to continue to operate food services at Fort Huachuca.

12. On January 26, 2023, the Army sent a debriefing letter that outlined what it erroneously contended were deficiencies with ADES's proposal.

13. After a month of communications between counsel for ADES and counsel for the Army, on March 6, 2023, ADES's Program Administrator sent a letter to the Army's Contracting Officer explaining the Army's misunderstandings and requesting that the Army reconsider its exclusion of ADES's from further consideration.

14. On April 3, 2023, the Army's Contracting Officer responded to ADES's request for reconsideration and informed ADES that, after review by the Army Sustainment Command, which is notorious for its hostility to the Randolph-Sheppard priority, the Army declined to reconsider its decision.

15. On May 30, 2023, ADES filed a request for arbitration with the U.S. Department of Education pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107d-1(b). The arbitration complaint challenged the Army's exclusion of ADES from consideration for the award.

16. ADES's current contract will end on August 31, 2023, and it could be replaced as early as September 1, 2023. As is common in such cases, ADES requests that

1050789\313728747.v1

the Court maintain the status quo until the arbitration panel has decided whether the Army correctly applied the Randolph-Sheppard Act and regulations in choosing an operator at Fort Huachuca.

17. With this Complaint, ADES seeks to enjoin the Army from (1) proceeding with any award under the Solicitation, or (2) if a contract award has been made, proceeding with contract performance under the newly awarded contract, until the statutorily mandated arbitration proceeding concludes. ADES will file a Motion for Preliminary Injunction to accompany this Complaint.

## JURISDICTION AND VENUE

18. This court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346(a)(2) (civil action against the United States), 28 U.S.C. § 2201 (authorizing declaratory relief), and 28 U.S.C. § 2202 (authorizing injunctive relief).

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to the claim occurred in this district (at Fort Huachuca) in Cochise County, Arizona.

## PARTIES

20. Plaintiff, the Arizona Department of Economic Security (ADES), is an agency of the State of Arizona and is the State Licensing Agency (SLA) under the Randolph-Sheppard Act, 20 U.S.C. § 107b, 34 C.F.R. § 395.5.

21. Defendant, Christine Wormuth, in her capacity as the Secretary of the Army, is the chief executive officer of the United States Department of the Army.

///
///
///
///

## STATEMENT OF FACTS

*Background*

22. This case arises from the Army's failure to correctly apply the priority and procedures required by the Randolph–Sheppard Act to a contract for the provision of food services at Fort Huachuca.

23. Congress enacted the Randolph-Sheppard Act for the purposes of "providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting." 20 U.S.C. § 107(a). In furtherance of these goals, Congress mandated that federal agencies give a priority to blind vendors to operate vending facilities on federal property. *Id.* § 107(b).

24. In enacting the 1974 amendments to the Act (the most-recent amendments), Congress described the Randolph-Sheppard program as "one of the most effective employment opportunity programs ever enacted by Congress." S. Rep. No. 93-937 at 13 (1974)

25. At the same time, Congress recognized the military's longstanding hostility to the Act and its purposes. *See id.* at 10 ("Commanders of military installations are *singularly insensitive* to the need to develop the program.") (emphasis added).

26. The Department of Education is the federal agency charged with implementing the Act. *See* 20 U.S.C. § 107a(a).

27. The Randolph–Sheppard Act requires that the Secretary of Education prescribe regulations designed to assure that "wherever feasible, one or more vending facilities are established on all Federal property to the extent that any such facility or facilities would not adversely affect the interests of the United States." *Id.* § 107(b)(2). Further, when authorizing the operation of vending facilities on federal property,

1050789\313728747.v1

agencies must afford "priority. . . to blind persons licensed by a State agency." *Id.* § 107(b)(1).

28. With respect to cafeterias on federal properties (which include food service facilities on military bases, *see NISH v. Cohen,* 247 F.3d 197 (4th Cir. 2001); *NISH v. Rumsfeld*, 348 F.3d 1263 (10th Cir. 2003)), the Randolph-Sheppard Act provides:

> The Secretary [of Education] through the Commissioner [of the Rehabilitation Services Administration] shall prescribe regulations to establish a priority for the operation of cafeterias on federal property when he determines, on an individual basis and after consultation with the head of the appropriate installation, that such operation can be provided at a reasonable cost with food of high quality comparable to that currently provided to employees, whether by contract or otherwise.

20 U.S.C. § 107d-3(e).

29. The resulting regulations, 34 C.F.R. 395.33 *et seq.*, are referred to herein as the "Cafeteria Regulations."

30. Promulgated pursuant to that law, the Cafeteria Regulations require that:

> Priority in the operation of cafeterias by blind vendors on Federal property shall be afforded when the Secretary determines, on an individual basis, and after consultation with the appropriate property managing department, agency, or instrumentality, that such operation can be provided at a reasonable cost, with food of a high quality comparable to that currently provided employees, whether by contract or otherwise. Such operation shall be expected to provide maximum employment opportunities to blind vendors to the greatest extent possible.

34 C.F.R. § 395.33(a).

31. In each state, a state licensing agency ("SLA") manages the Randolph-Sheppard program. 20 U.S.C. § 107b, 34 C.F.R. §§ 395.2-.5. Under the Cafeteria Regulations, federal agencies enter into contracts with the local SLA to operate cafeterias on federal properties, and the SLA in turn identifies suitable blind individuals to operate the vending facilities. 34 C.F.R. § 395.33.

32. The Randolph–Sheppard Act also provides a procedure for the resolution of disputes between an SLA and a federal agency. The SLA submits a request for arbitration

to the Secretary of Education; the Secretary then convenes an arbitration panel to hear the complaint; and the arbitration panel issues a decision that is binding on the federal agency defendant and is subject to judicial review as a final agency action. 20 U.S.C. §§ 107d–1(b), 107d–2; 34 C.F.R. § 395.37.

***ADES Services at Fort Huachuca***

33. ADES and its licensed blind vendors have successfully provided full food services at Fort Huachuca for close to 20 years.

34. The Army has awarded ADES a series of contracts over the past two decades, most recently in March 2021. Before then, in March 2016, the Army provided ADES with a five-year contract to provide full food services at Fort Huachuca.

35. ADES's current blind vendor at Fort Huachuca, Scott Weber, is the president of Thunder Mountain Enterprises (TME).

36. Mr. Weber has over 35 years of food service experience and has served as the blind vendor operating the Fort Huachuca cafeterias since 2014. In this role, Mr. Weber and the TME team manage all aspects of the food services operation, including cooking, providing adequate staffing, menu planning, food storage, and food serving; conducting and coordinating required trainings; cleaning the dining facilities; submitting reports to the Army in a timely manner; and ensuring the safety of employees and soldiers.

37. There are three separate cafeterias at Fort Huachuca: Weinstein, Thunderbird, and Black Tower.

38. The Army has consistently rated ADES's performance at Fort Huachuca favorably.

39. Among other evaluation documents, the Army has completed Contractor Performance Assessment Reports (CPARs).

1050789\313728747.v1

40. In the most recent rating period, the Army found that ADES "meets contractual requirements," adding that there "are no schedule issues with serving the breakfast, lunch, dinner and 4th meal requirements at the applicable DFACs [dining facilities]." The evaluation added, "[t]he Contractor continuously meets the schedule of last minute meal requests with little to no turn around time." ADES received a score of 96% on the quality-of-life report conducted in October 2022.

41. The recent CPAR also stated that ADES "stays within the total estimated cost."

42. In the same CPAR, dated December 15, 2022, the Army's evaluator wrote: "Given what I know today about the contractor's ability to perform in accordance with this contract or order's most significant requirements, I would recommend them for similar requirements in the future."

### The 2022 RFP and the Army's Erroneous Decision to Exclude ADES

43. In March 2022, the Army issued a Solicitation for a new five-year contract to provide food services at the Fort Huachuca cafeterias.

44. The Solicitation states that "[t]his procurement will be conducted to pursuant to the Randolph-Sheppard Act (R-SA), 20 U.S.C. [§] 107 [] Operation of Vending Facilities and 34 CFR § 395.33 Operation of Cafeterias by Blind which establishes priority for blind persons recognized and represented by the State Licensing Agency (SLA), in the award of contracts for the operation of cafeterias on federal facilities."

45. The Solicitation identified three criteria by which proposals would be evaluated: (1) technical capability, (2) past performance, and (3) price. The technical capability factor consisted of two subfactors: (i) key personnel and qualification and (ii) staffing plan.

46. In May 2022, ADES timely responded to the Solicitation.

47. ADES's staffing proposal was based on its extensive experience operating the cafeterias at issue, and it included adequate staffing for that operation. As ADES explained in its submission, "[w]e were able to determine the staffing needs of each DFAC based on our ongoing knowledge of the facility layout and size, meal requirement and anticipated headcount."

48. By letter dated January 20, 2023, the Army notified ADES that the Army had completed its initial evaluation of proposals received in response to the Solicitation and had excluded ADES from further consideration after finding ADES's proposal to be technically unacceptable. The Army rated ADES as acceptable for subfactor 1 (key personnel and qualification) but rated ADES as unacceptable for subfactor 2 (staffing plan). The Army rated ADES's past performance as acceptable.

49. In its January 20th letter, the Army wrote, "you are hereby notified that ADES will receive no further consideration for award and any revision(s) to your Proposal will not be accepted."

50. Prior to excluding ADES's proposal, the Army did not contact ADES to discuss the supposed "deficiencies" in that proposal.

51. On January 26, 2023, the Army provided limited additional information in a debriefing letter, which outlined what it contended were deficiencies with ADES's proposal, focusing primarily on a mistaken contention that ADES's proposal lacked sufficient cashiers at the dining facilities.

52. Over the next month, counsel for ADES communicated with counsel for the Army to request that the Army reconsider its exclusion of ADES from further consideration for the Fort Huachuca contract.

53. On March 6, 2023, ADES Program Administrator Kristen Mackey sent a letter to Michael J. Vicory, the Army contracting officer responsible for the Fort Huachuca Solicitation, requesting that the Army reconsider its exclusion of ADES's

proposal from further consideration. In that letter, ADES pointed out the Army's errors in evaluating ADES's proposal.

54. Contracting Officer Vicory referred ADES's request for reconsideration to the Army Sustainment Command, which is known for its hostility to the Randolph-Sheppard priority.

55. On April 3, 2023, Mr. Vicory responded to Ms. Mackey's letter. In his letter, Mr. Vicory wrote that the "hours are ample for managing the headcount [the job performed by the cashiers] and admin functions for the total hours for the day"—i.e., he appears to acknowledge that the Army had misunderstood ADES's initial proposal.

56. However, through Mr. Vicory's letter, the Army (belatedly) claimed to have concerns about the security of a $25 "change fund" for which the "Admin/Cashier" employees have responsibility. This post-hoc, pretextual rationale lacks any merit given that ADES has operated the cafeterias, including the cash registers, at Fort Huachuca for almost twenty years without incident; the Army's attempt to nit-pick ADES's proposal on a non-issue reflects its hostility to the Randolph-Sheppard priority; and the Army's alleged concern could easily be addressed through meaningful discussions.

*The Army's Violations of the Randolph-Sheppard Act*

57. The Army's decision to exclude ADES from consideration for the Fort Huachuca food services contract violated the Randolph-Sheppard Act and its regulations in at least four respects: (1) the Army improperly evaluated ADES's bid to be technically unacceptable and relied on that conclusion to exclude it from the competitive range, (2) even if the Army had properly deemed ADES's bid to be technically unacceptable, the Army still violated the Act because any supposed "deficiencies" could have been remedied by meaningful discussions, (3) the Army failed to consult with the Secretary of Education, and (4) the Army failed to apply and follow the stated evaluation criteria in the Solicitation.

10

**The Army improperly judged ADES's proposal to be technically unacceptable.**

58. The Army should not have judged ADES's proposal to be technically unacceptable.

59. As reflected in its debriefing letter, the Army excluded ADES's proposal because the Army contended that the proposal did not include enough staffing.

60. The Army's main criticism was that ADES "significantly understaffed" or "grossly understaffed" the "Cashier" position (i.e., the employees responsible for recording the headcount of soldiers who are entering the dining halls) by as much as "101%" [sic].

61. In other words, the Army contended that ADES did not include *any* staffing for the Cashier position.

62. The Army misapprehended ADES's proposal.

63. ADES included ample staffing for the Cashier position—doing so under the titles "Admin/Cashier" in the written technical proposal and "Office Clerk" in the Staffing Matrix. In the technical proposal document, ADES listed the Admin/Cashier's core responsibility as being to "[r]ecord headcount," adding that "soldier headcounts should be recorded quickly and in an orderly manner upon entry."

64. The Army's debriefing letter also included two minor gripes with ADES's staffing proposal that similarly resulted from the Army's misapprehension of the proposal (which would have been clarified through discussions) and further ignored that—according to the Army—ADES has successfully staffed the same cafeterias at issue for the last two decades.

65. The Army complained that ADES's proposal for Food Sanitation Specialist (FSS) and Dining Facility Attendant (DFA) positions were "somewhat understaffed," by "1-21%."

1050789\313728747.v1

66. Minor differences between ADES's proposed staffing and the Army's estimate, however, are not a sufficient basis to exclude ADES's proposal altogether. If that were true, then no bidder, other than one who predicted the Army's exact staffing estimates, could ever qualify for a contract.

67. The Army's claim that the DFA and FFS positions were understaffed is also belied by the fact that ADES based its staffing proposal on its actual experience running the Fort Huachuca cafeterias, during which the Army has consistently found ADES's staffing to be appropriate.

68. The Army's evaluation also ignored that, as explained in ADES's proposal, "DFAs and FSSs are cross utilized to help each other with cleaning and serving tasks." In other words, ADES equipped some of its employees "with the skills and knowledge necessary to perform their assigned tasks and [those of] others," thereby creating staffing efficiencies, and as a result, cost savings for the Army.

69. The only other claimed deficiency asserted in the Army's debriefing letter was that ADES did not include staffing for two hypothetical scenarios at the Thunderbird cafeteria. On this issue, the Army has conceded that those two scenarios do *not occur* at Fort Huachuca, and it ignored that ADES *did* include pricing for those two scenarios in the Pricing Matrix submitted with its proposal.

70. ADES has operated the contract for close to two decades, during which time the Army has repeatedly confirmed that ADES provides appropriate levels of staffing.

71. The Army should not have deemed ADES's proposal to be technically unacceptable, and thus its exclusion of ADES from the competitive range violated the Randolph-Sheppard Act and its regulations.

1050789\313728747.v1

**The Army excluded ADES's bid from the competitive range even though any minor "deficiencies" could have been remedied by meaningful discussions.**

72. Even if the Army were correct in determining ADES's bid to be technically unacceptable (which ADES disputes), the Army still erred by excluding ADES from the competitive range.

73. As used in the Cafeteria Regulations, the term "competitive range" has the meaning it had when the regulations were adopted in 1977. At that time, the term "competitive range" meant that any proposal "must be considered to be within a competitive range so as to require negotiations unless it is so technically inferior or out of line with regard to price that meaningful discussions are precluded." *To the Sec'y of the Air Force*, 48 Comp. Gen. 314, 317 (Nov. 13, 1968).

74. In 1988, the Department of Education (DOE) issued a handbook titled "Administration of the Randolph-Sheppard Vending Program by Federal Property Managing Agencies."

75. The purpose of the DOE's Randolph-Sheppard handbook is to "[e]xplain in sufficient detail the requirements of the legislation and implementing regulations as they relate directly to the Federal property managing agencies."

76. Chapter VII of DOE's handbook, which pertains to the "Operation of Cafeterias," provides:

> Considering the clear intent of the [Randolph-Sheppard] Act, the determining factor for judging whether a proposal [of the SLA] should be within the competitive range is if the offer *can be made acceptable by conducting meaningful discussions* . . . A proposal *must* be considered within the competitive range unless it is technically inferior or contains unduly high prices . . . that the possibility of being made acceptable through meaningful negotiations is precluded.

(Emphasis added.)

77. The Army violated this requirement.

1050789\313728747.v1

78. The alleged "deficiencies" in ADES's bid could easily have been made acceptable through meaningful discussions.

79. The Army failed to conduct any discussions with ADES about its proposed staffing, let alone meaningful discussions.

80. Nor did the Army consider whether ADES's proposal could have been made acceptable through meaningful discussions.

81. At locations throughout the country, the Army has frequently communicated with SLA (and/or other bidders) to clarify their proposals. For example, with regard to the solicitation for food services at Fort Lee, Virginia, in September 2021, the Army sent "Evaluation Notices" to multiple bidders identifying what it believed to be the deficiencies in their proposals and asking the bidders an opportunity to clarify or correct their respective proposals.

82. The Army did not issue an Evaluation Notice to ADES or otherwise give ADES any opportunity to clarify or correct its proposal before excluding ADES's proposal from the competitive range.

83. Had the Army initiated meaningful discussions (as required), its alleged issues regarding ADES's bid would have been resolved. Had the Army communicated its desire for less staffing for certain positions at certain times, for example, ADES would have obliged.

84. Because ADES's proposal could readily have been made acceptable to the Army through meaningful discussions, the Army violated the Randolph-Sheppard Act by excluding that proposal from the competitive range.

**The Army failed to consult with the Secretary of Education as required.**

85. Congress delegated to the Secretary of Education the authority to grant or withhold the priority to be afforded to blind vendors.

86. The cafeteria regulation provides that that:

> (a) *Priority in the operation of cafeterias by blind vendors* on federal property shall be afforded w*hen the Secretary determines*, on an individual basis, and after consultation with the appropriate property managing department, agency or instrumentality, that such operation can be provided at a reasonable cost, with food of a high quality comparable to that currently provided employees, whether by contract or otherwise.

34 C.F.R. § 395.33(a) (emphasis added).

87. Despite this requirement, the Army entirely failed to involve the Secretary of Education in this decision.

88. Had it done so, the Secretary would have concluded that ADES and its licensed blind vendor could provide "food of high quality comparable to that currently provided employees" and that it can provide that operation at a reasonable cost (as the Army cannot dispute, given that ADES is the incumbent operator).

**The Army improperly evaluated the other bidders' proposals.**

89. The cafeteria regulations provide that "solicitations for offers shall establish criteria under which all responses will be judged." 34 C.F.R. § 395.33(b).

90. The criteria stated in the Solicitation consisted of technical capability, past performance, and price.

91. The Army did not consistently apply these criteria to all the proposals received in response to the Solicitation.

92. For instance, the Army did not consistently apply the technical capability criteria to the other proposals. It faulted ADES's proposal for being "somewhat understaffed" by 1 to 20% for DFA and FFS positions, but it did not apply that same level of scrutiny to the other proposals. Had it done so, the Army would have excluded other bidders as "technically unacceptable" because, on information and belief, those bids included proposed staffing that deviated from the Army's estimates by between 1 to 21%.

1050789\313728747.v1

93. The Army should have also excluded bidders for including *too much* staffing, i.e., staffing that was unnecessary to adequately meet the requirements of the contract. By deeming proposals that included more staffing than what ADES proposed (which was grounded in its extensive experience and the Army has repeatedly recognized as appropriate) to be "acceptable," the Army failed to properly apply the technical capability criteria.

94. The Army thus evaluated the other proposals incorrectly and in a manner inconsistent with the Solicitation and the Randolph-Sheppard Act and regulations.

***Status of Fort Huachuca food services contract and procedural posture.***

95. The Army has notified ADES that its operation of the full food services contract at Fort Huachuca will end as early as September 1, 2023. Therefore, time is of the essence.

96. The Army confirmed in its letter of April 3, 2023, that it would maintain its decision of excluding ADES from consideration.

97. On May 30, 2023, ADES timely submitted a Request for Arbitration to the Secretary of Education, thereby initiating the process outlined in the Randolph-Sheppard Act. *See* 20 U.S.C. §§ 107d-1, 107d-2.

98. Because ADES will lose a major contract that provides substantial financial support to a program that benefits numerous blind vendors in Arizona, because ADES's blind vendor will lose his livelihood, and because sovereign immunity most likely precludes damages against the Army, ADES and its blind vendor will be irreparably harmed unless their removal is enjoined pending the outcome of the arbitration.

99. Pursuant to the Federal Rules of Civil Procedure, Defendant has 60 days to respond to this Complaint. Fed. R. Civ. P. 12(a)(2). Because ADES will lose its contract as soon as September 1, 2023, when performance of the new contract in dispute will have

begun, preliminary injunctive relief is appropriate prior to an Answer being filed. Fed. R. Civ. P 65 allows for this pre-judgment injunctive relief.

100. It is not necessary for Defendant to file an Answer or otherwise appear before injunctive relief may be granted. The only requirement is that Defendant be given notice of the request for injunctive relief, notice of the hearing, and an opportunity to be heard.

## COUNT I

**(The Army's Actions are Contrary to Law and Fail to Observe Procedure Required by Law, in Violation of the Administrative Procedure Act)**

101. ADES repeats and incorporates by reference all allegations of fact set forth above.

102. The Administrative Procedure Act ("APA"), 5 U.S.C. § 702, allows persons suffering a legal wrong or adversely affected or aggrieved because of agency action to seek judicial relief.

103. By failing to properly evaluate the bids submitted, including that of ADES, and by failing to include ADES's bid in the "competitive range," the Army has violated the Randolph-Sheppard Act and its regulations, acted in a manner not in accordance with law, and failed to observe procedure required by law.

104. By failing to consult with the Secretary of Education prior to eliminating ADES from consideration for award of the Fort Huachuca food services contract, as required by 20 U.S.C. § 107d-3(e) and 34 C.F.R. § 395.33(a), the Army has failed to observe procedure required by law, exceeded statutory limitations, and acted in a manner not in accordance with law.

105. ADES's complaints regarding the Army's award of the Fort Huachuca dining services contract are reviewable by an arbitration panel convened by the Secretary of Education under 20 U.S.C. § 107d-1(b).

1050789\313728747.v1

106. The arbitration panel's decision will be a final agency action that is reviewable by this Court. 20 U.S.C. § 107d-2(a) (referencing 5 U.S.C. Chapter 7).

107. The APA authorizes injunctive relief to hold unlawful and set aside acts by federal agencies that are arbitrary, capricious, or contrary to law; that exceed statutory authority or limitations; or that fail to observe procedure required by law. 5 U.S.C. §§ 702, 706(2).

108. The APA further authorizes injunctive relief pending review, and specifically authorizes a court to which a case may be taken on appeal (as this case may be taken to this court on appeal from the decision of the arbitration panel) to take action to postpone the effective date of the agency action or to preserve status or rights pending conclusion of the review proceedings. 5 U.S.C. § 705.

## COUNT II
### (The Army's Actions are Contrary to the Randolph-Sheppard Act)

109. ADES repeats and incorporates by reference all allegations of fact set forth above.

110. The Randolph-Sheppard Act and its implementing regulations, 34 C.F.R. § 395.33, create a priority for blind vendors to operate food service facilities at federal properties.

111. In addition, the Randolph-Sheppard Act and regulations delineate how federal property owners are to apply that priority when awarding contracts for the operation of cafeterias on federal properties.

112. By failing to properly evaluate the bids submitted, including that of ADES, the Army violated the terms of the Randolph-Sheppard Act and its regulations. 20 U.S.C. § 107d-3(e); 34 C.F.R. § 395.33(a).

113. In addition, by failing to consult with the Secretary of Education prior to eliminating ADES from consideration for award of the full food services contract at Fort

Huachuca, the Army has further violated the Randolph-Sheppard Act and its regulations. 20 U.S.C. § 107d-3(e); 34 C.F.R. § 395.33(a), (b).

114. Under the Randolph-Sheppard Act, ADES is required to have its complaints regarding the Army's failure to comply with the provisions of the Act and its regulations heard and decided by an arbitration panel convened by the Secretary of Education pursuant to 20 U.S.C. §§ 107d-1(b) and 107d-2.

115. By letter to the Secretary of Education dated May 30, 2023, ADES has requested that such an arbitration panel be convened.

116. This Court has jurisdiction over an appeal from that panel's decision (the "final agency action"). 20 U.S.C. § 107d-2(a). It also has jurisdiction to ensure that such an appeal is not futile by entering a preliminary injunction if ADES meets the standard for one.

117. Pursuant to 5 U.S.C. §§ 702 and 705, ADES requests that the Court enter a preliminary injunction until an arbitration panel convened pursuant to the Randolph-Sheppard Act renders a decision on the substance of ADES's claims against the Army for its violations of the Randolph-Sheppard Act and regulations and any appeal of that arbitration decision is concluded.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Arizona Department of Economic Security requests that the Court:

1. Set a hearing on its request for a preliminary injunction as soon as practicable, with instructions that counsel for Plaintiff immediately provide notice of the hearing to Defendant so the Army and its attorney may be present at the hearing;

2. Enjoin the Secretary of the Army from replacing ADES as the operator of food services at Fort Huachuca until after the conclusion of the pending Randolph-Sheppard arbitration proceeding and any appeal thereof;

1050789\313728747.v1

3. Enter a judgment (including injunctive relief) compelling any agency action unlawfully withheld, pursuant to 5 U.S.C. § 706(1);

4. Enter a judgment (including injunctive relief) setting aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, pursuant to 5 U.S.C. § 706(2); and

5. Order any and all other relief this Court deems appropriate.

DATED this 2nd day of June, 2023.

HINSHAW & CULBERTSON LLP

/s/ Randy J. Aoyama
Randy J. Aoyama
Megha Singh
*Attorneys for Defendants*