# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

ARIZONA DEPARTMENT OF )
ECONOMIC SECURITY )
)
Plaintiff, )
)
) Civil Action No. 23-cv-00250 (LCK)
v. )
)
CHRISTINE WORMUTH, SECRETARY )
OF THE ARMY, )
)
Defendant. )
_____ )

## DECLARATION OF MICHAEL J. VICORY

I, Michael J. Vicory, declare as follows:

1. I make this Declaration based on my personal knowledge in response to Plaintiff Arizona Department of Economic Security's ("ADES") Motion for Preliminary Injunction filed on July 7, 2023, in the above-entitled action (the "Motion"). I am competent to make this Declaration and would testify consistent with the statements in it if called to do so at trial.

2. I am the Director, Installation Readiness Center (IRC) at the Army's Mission Installation Contracting Command (MICC) and serve as the current Procuring Contracting Officer (PCO) for Solicitation No. W9124J-21-R-0027, which is the subject of the Motion. Mr. Gary Stevens served as the PCO initially for this procurement. On January 1, 2023, I took over contracting officer duties due to Mr. Stevens' retirement.

3. As the IRC Director, I am responsible for leading an organization established in 2021 assigned the responsibility to effectively promote strategic Army category management objectives and align MICC contract execution with our major mission partners' readiness priorities and lines of effort. IRC is the strategic contract execution location for new and follow-on contract for installation support, to include food service. I have over 22 years of contracting experience and 16 years demonstrated experience leading diverse organizations across the federal government that have delivered timely, compliant, and cost-effective procurement solutions. For over 15 years, I have held a Contracting Officer's Warrant, which is a document that gives a Contracting Officer sole authority to bind the United States government in contract. I have held an unlimited warrant for over 12 of those 15 years. My unlimited warrant with the MICC was issued on 25 Oct 2022.

4. The Motion concerns a dispute between ADES and the United States Army regarding a contract for the operation of dining facilities on the Army's Ft. Huachuca installation in Sierra

Vista, Arizona. The purpose of the contract is to ensure seamless provision of quality food and services to the Army's soldiers at Fort Huachuca.

5. In accordance with Title 34 of the Code of Federal Regulations (C.F.R), Section 395.33, Operation of Cafeterias by Blind Vendors, the Army had the right to choose one of two methods of selecting contracts to operate the dining facilities to establish priority in selection under the Randolph-Sheppard Act ("RSA"): direct negotiations or competitive selection processes. 34 C.F.R., § 395.33. The Army was not required to use the direct negotiations method. *See* 34 C.F.R., § 395.33(b). In this instance, the Army chose to use competitive selection processes.

6. The Request for Proposals (RFP) for the contract at issue in the Motion was published on March 25, 2022. A true and accurate copy of the RFP is attached hereto as **Attachment 1.** The RFP solicited offers to provide Full Food Services (FFS) for the dining facilities supporting Fort Huachuca, Arizona. The solicitation delineated that the United States government intended to award a single award Indefinite-Delivery/Indefinite-Quantity (ID/IQ) contract with the ability to issue Firm-Fixed Price Task Orders. The resultant contract will provide for a five (5) year ordering period and includes a six (6) month extension in accordance with FAR 52.217-8, Extension of Services.

7. The solicitation established evaluation criteria that were put in place to meet the *minimum* requirements of the requiring activity, consisting of three factors: Technical Capability, Past Performance, and Price. Under the Technical Capability factor there were two subfactors: Subfactor 1: Organizational Structure, and Subfactor 2: Staffing Plan. The Army evaluated proposals' technical capability on an acceptable and unacceptable basis. An "unacceptable" rating in any sub-category rendered the proposal technically unacceptable because it did not meet the requirements of the solicitation.

8. The solicitation outlined all steps in the proposal evaluation process:

*STEP 1. After initial evaluation of timely received proposals in accordance with (IAW) the evaluation criteria specified in this solicitation and based on those initial evaluations, to include the total evaluated price (TEP), a Competitive Range (CR) will be established from proposals evaluated as "Acceptable". If the contracting officer determines that a proposal should be excluded from the CR, the contracting officer will provide written notice of the exclusion to that offeror. If the SLA's proposal is excluded from the CR, the SLA may file a complaint with the Secretary of Education under the provisions of 34 CFR § 395.37.*

*STEP 2. In accordance with Army Directive 2020-05 (Vending Facility Program for the Blind on Federal Property), the Government shall enter into discussions/negotiations with all offerors whose proposals have been determined to be in the CR established in Step 1, above. If, after discussions have begun, the Government determines that an offeror's proposal should no longer be included in the CR, the proposal will be eliminated from consideration for award. Written notice of the exclusion from the CR will be provided to unsuccessful offerors. If the SLA is removed from the CR at this time, the SLA may file a complaint with the Secretary of Education under the provisions of 34 CFR § 395.37.*

*STEP 3. The Government will request Final Proposal Revisions (FPRs) at the conclusion of discussions with the offerors remaining within the CR. The FPRs will be evaluated IAW the evaluation criteria specified in this solicitation. The Government does not intend to conduct further discussions after receipt of the FPRs. As such, offerors in the CR are cautioned to submit their best offer for the FPRs. However, if the contracting officer determines it necessary, the Government may establish a revised CR, re-open and conduct discussions again after receipt of FPRs, and then call for new FPRs.*

*STEP 4. After evaluation of the FPRs has been completed, the offeror with a technically acceptable proposal with the lowest evaluated reasonable price and acceptable past performance will be the offer that represents the LPTA offer for the Government. The LPTA evaluation process stops at this point. Subject to a determination of contractor responsibility, that offeror will receive award unless preempted by application of the SLA priority in accordance with SLA Priority (STEP 5), below.*

*STEP 5. If the LPTA offer, as determined under STEP 4 above, is not the SLA, the Government will determine if award to the SLA shall preempt the LPTA offeror using the following criteria in accordance with the R-SA:*

*(i) If the SLA's proposal was included in the CR, found to be technically acceptable with acceptable past performance and the SLA demonstrates through its proposal that it can provide W9124J21R0027 such an operation at a fair and reasonable price as determined by the Government after applying the source selection criteria contained in the solicitation and provide food of high quality comparable to what is currently provided to service members, then priority/award will be given/made to the SLA subject to a determination of contractor responsibility and consultation with the Secretary of Education (IAW 34.CFR § 395.33(b).*

*(ii) If the SLA proposal does not meet all criteria listed in the RFP and in paragraph (i) above, the SLA priority will not apply and award will be made to the LPTA offeror subject to a determination of contractor responsibility. If the SLA is dissatisfied with an action taken relative to its proposal, it may file a complaint with the Secretary of Education under the provisions of 34 CFR § 395.37.*

9. All those seeking to submit a proposal in response to the RFP had an opportunity to submit any and all technical questions or clarifications to the Contracting Officer and Contract Specialist.

10. On April 21, 2022, the MICC amended the RFP to provide answers to technical questions and make associated changes to the solicitation to assist potential offerors in forming their proposals. On April 28, 2022, the MICC amended the RFP and added a site visit at Fort Huachuca allowing potential offerors to visit the food service dining facilities to better understand the layout and how food service operations are conducted. The MICC further amended the RFP on May 6, 2022, and May 9, 2022, assisting the offerors in meeting the Army's minimum requirements even further.

11. The RFP specified that proposals were due on May 13, 2022. The contract was designated 100% set-aside for small businesses. However, in compliance with the RSA, ADES was permitted to submit a proposal in response to the RFP even though it is not a small business. ADES timely submitted a proposal. in May 2002. Prior to that date, ADES did not raise any questions or concerns about the evaluation process or the requirements of the solicitation.

12. The Government initiated a Source Selection Evaluation Board (SSEB) to conduct a technical evaluation of all proposals, with the result for ADES delineated in the table below:

| AZ Dept of Economic Security | |
| --- | --- |
| Factor 1: Technical Capability | Unacceptable |
| Subfactor 1: Organizational Structure | Acceptable |
| Subfactor 2: Staffing Plan | Unacceptable |
| Factor 2: Past Performance | Acceptable |
| Factor 3 Price | [redacted as irrelevant because an unacceptable rating on any factor required exclusion from the competitive range] |

13. As noted in the SSEB's past performance evaluation, ADES is performing under the existing contract in an acceptable manner. However, with any procurement, the Government evaluates each offeror impartially based on the content of its proposal; it does not make assumptions based on its knowledge of the incumbent's current performance to determine technical acceptability. For the RFP being challenged, ADES' proposed technical approach was evaluated as unacceptable, based on its staffing plan.

14. As ADES' staffing plan was evaluated as unacceptable—lacking sufficient personnel—ADES was rated overall technically unacceptable, and, in accordance with the solicitation criteria (STEP 1), it was excluded from the competitive range. ADES was notified via letter correspondence on January 20, 2023, that they were being excluded from the competitive range. (*See* Plaintiff's Exhibit 10.) That same day, as allowed under the Federal Acquisition Regulations (FAR), ADES requested a debrief on the rationale for the decision to exclude them from the competitive range. (*See* Plaintiff's Exhibit 11.)

15. I provided the requested debriefing in writing on January 26, 2023. (*See* Plaintiff's Exhibit 12.) The debriefing explained that ADES's proposal was understaffed to meet the minimum requirements of the requiring activity for multiple reasons. For example, as specifically stated in the debriefing, the proposal was understaffed as to Cashiers to such a degree that it would hinder the requirements in paragraph 3.2.1.1 of the PWS, which relates to the tasks of performing a headcount. As the debriefing also explained, the proposal was also understaffed as to Food Sanitation Specialists such that there were not enough staff to satisfactorily clean all food equipment, areas, and utensils and ensure proper sanitation. Plaintiff's proposed staffing created too much risk of negative performance issues, including inefficient flow rate and excessive patron waiting times.

16. On March 6, 2023, ADES submitted a letter to me, as the Contracting Officer, alleging that the Army's evaluation of ADES was inaccurate, and that ADES's staffing plan was acceptable. (*See* Plaintiff's Exhibit 13.)

17. On April 3, 2023, I responded to that letter. (*See* Plaintiff's Ex. 14.) As I stated in the April 3, 2023 letter, after receiving ADES's March 6, 2023 letter taking issue with the SSEB's recommendation, I requested the requiring activity, Army Sustainment Command (ASC), provide an independent review of ADES's proposal. ASC provided two (2) subject matter experts (SME's) that were not members of the original Source Selection Evaluation Board (SSEB), and they were provided ADES' staffing matrix, technical proposal, the Government's technical memorandum (which delineated the rationale for finding ADES technically unacceptable), and the letter from ADES asking for the re-evaluation. As noted in my letter, that independent review validated the findings of the SSEB that ADES's proposal was, in fact, technically unacceptable as it did not meet the solicitation requirements.

18. On May 30, 2023, ADES submitted a request for arbitration with the United States Department of challenging the Army's exclusion of ADES from consideration for the award of the contract to provide dining services at Ft. Huachuca. On July 10, 2023, the Secretary of the Department of Education authorized the convening of an arbitration panel to hear and render a decision on the issues raised in the request. Attached hereto as **Attachment 2** is a true and accurate copy of the convening letter dated July 10, 2023.

19. In my experience as a Contracting Officer, RSA arbitrations often drag on for years. In the interim, if a disappointed incumbent contractor obtains an injunction against the government precluding it from awarding the contract to the successful bidder, the government must continuously negotiate sole source contracts with the incumbent contractor, in effect allowing the contractor to negate the competitive selection process mandated by law.

20. On June 20, 2023, ADES filed the present Motion seeking an injunction pending the outcome of the arbitration. In that Motion, ADES asserted that I conceded in my April 3, 2023 letter that ADES proposed sufficient staffing and therefore should not have been evaluated as "technically unacceptable," and excluded from the competitive range. This is factually incorrect. The SSEB's initial technical evaluation concluded that ADES was "grossly understaffed", specifically as it relates to the Cashiers position. As a result, and in accordance with the terms expressly stated in the RFP, they were removed from the competitive range.

21. Contracting Officers are not required to engage in the re-evaluation of a proposal after it has been eliminated from the competitive range; the de-brief provides the government's rationale. However, in this instance, I went beyond what was required of me and obtained the independent SME reevaluation. I then provided a detailed explanation to ADES in my April 3, 2023, letter to provide context to the SSEB's determination of why ADES's staffing posture was assessed as inadequate (e.g., significantly and grossly understaffed) and how it could negatively impact DFAC (dining facility) operations. Specifically, as stated in my April 3, 2023, letter:

> *As it relates to the Thunderbird DFAC, the ASC SME's noted that normally, the Admin issues the change fund to the headcount and receives the funds back to account on a form DA 3546. Based on your proposal, the Admin would be issuing the change fund to him or herself and receiving the funds back. This is not an appropriate means to safeguard the change fund. It was not explained how this process would be performed correctly. As it relates to the Weinstein DFAC, the SME's noted that during breakfast and lunch the ADES Proposal was not clear enough for the evaluators to see how the change fund would be managed with controls for cash. Dinner was unclear on how the cash would be safeguarded from theft for both bands. While hours are ample for managing the headcount and admin functions for the total hours for the day, it would not work for accountability at dinner without rearranging hours and providing an explanation in the proposal. The SME's concluded that the SSEB correctly evaluated ADES's approach as unacceptable.*

22. ADES also states in their Motion that the Army had "included only two other minor gripes with ADES's staffing proposal that similarly resulted from the Army's misapprehension of the proposal." While ADES dismisses these findings, both the SSEB and the SMEs that conducted the independent review concluded that they were significant enough to be identified as a deficiency and contribute to the rating of "technically unacceptable", as explained in my April 3, 2023, letter as follows:

> *Your letter also stated that the SSEB's assessment of staffing deficiencies for the different bands at the Thunderbird DFAC was based on a misunderstanding; the SSEB ignored that the two bands where ADES did not provide staffing do not actually occur at Fort Huachuca. The ASC SME's noted that proposing a price without staffing did not allow the government to see if the proposal would correctly staff these bands. While the Army may currently not perform these meal services, it did not relieve the ADES from submitting a sufficient response, as it was part of the solicitation requirements. The SME's concluded that the SSEB correctly evaluated ADES's approach as unacceptable.*

> *Lastly, you state that small differences between ADES's staffing and the Army's estimate regarding Food Sanitation Specialists is not a sufficient basis to exclude ADES's proposal altogether. As explained in ADES's proposal, "[c]urrently, DFAs and FSSs are cross utilized to help each other with cleaning and serving tasks." The ASC SME's affirmed the SSEB's conclusion that ADES was understaffed in Band 2 for the Weinstein DFAC. Breakfast and dinner, as proposed, were understaffed for the tasks required. The SME's concluded that the SSEB correctly evaluated ADES's approach as unacceptable.*

23. With respect to communications with ADES before the competitive range was established (i.e., before ADES's proposal was excluded from the competitive range for being technically deficient), I followed FAR 15.306 which regulates permissible exchanges with offerors after

receipt of proposals. Had I discussed the deficiencies identified in ADES's proposal with ADES prior to establishment of the competitive range, I would have been in violation of the regulation.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the forgoing is true and correct.

Executed this 27th day of July 2023.

VICORY.MICHAEL.JOHN.1245775543
Digitally signed by VICORY.MICHAEL.JOHN.12457755 43
Date: 2023.07.27 16:08:19 -05'00'

Michael J. Vicory
Contracting Officer